UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CATHY BAINBRIDGE                                                                    PLAINTIFF

V.                              NO. 1:17CV00089-JTR

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions not reserved
to the Commissioner of Social Security                                              DEFENDANT

## ORDER

I. **Introduction:**

Plaintiff, Cathy Bainbridge, applied for disability benefits on April 20, 2015, alleging a disability onset date of May 20, 2014. (Tr. at 35). After conducting a hearing, the Administrative Law Judge (AALJ@) denied Bainbridge's application. (Tr. at 45). The Appeals Council denied her request for review. (Tr. at 1). Thus, the ALJ=s decision now stands as the final decision of the Commissioner.

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

II. **The Commissioner's Decision:**

The ALJ found that Bainbridge had not engaged in substantial gainful activity since the alleged onset date of May 20, 2014. (Tr. at 37). At Step Two, the ALJ found

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

that Bainbridge has the following severe impairments: bilateral foot pain and mood disorder. *Id.*

After finding that Bainbridge's impairments did not meet or equal a listed impairment (Tr. at 38), the ALJ determined that Bainbridge had the residual functional capacity ("RFC") to perform medium work, except that: (1) she can perform work where interpersonal contact is routine but superficial, the complexity of tasks is learned by experience, involves several variables, uses judgment within limits, and the supervision required is little for routine, but detailed for non-routine tasks. (Tr. at 39).

The ALJ found that, based on Bainbridge's RFC, she was able to perform past relevant work as home health aide and certified nurse's aide. (Tr. at 43). The ALJ also relied upon the testimony of the Vocational Expert ("VE"), to find that, based on Bainbridge's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including positions as medication tech and storeroom food checker. (Tr. at 44). Thus, the ALJ concluded that Bainbridge was not disabled. *Id.*

### III. Discussion:

    A. Standard of Review

The Court's function on review is to determine whether the Commissioner=s

decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. ' 405(g). While Asubstantial evidence@ is that which a reasonable mind might accept as adequate to support a conclusion, Asubstantial evidence on the record as a whole@ requires a court to engage in a more scrutinizing analysis:

> A[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner=s decision; we also take into account whatever in the record fairly detracts from that decision.@ Reversal is not warranted, however, Amerely because substantial evidence would have supported an opposite decision.@

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

B.   Bainbridge=s Arguments on Appeal

Bainbridge contends that substantial evidence does not support the ALJ=s decision to deny benefits. She argues that: (1) the RFC for medium work exceeded her functional abilities; and (2) more weight should have been given to the opinion of her treating physician. For the reasons explained below, the Court agrees with Bainbridge.

Bainbridge's arguments address only limitations arising from her foot conditions, so the Court will limit its discussion thereto.

Bainbridge testified that she has pain in her foot that keeps her from being

able to sit, stand, and walk comfortably. (Tr. at 59, 75). Her doctors have recommended that she use a cane, and she showed up with a cane at various doctor's appointments. (Tr. at 65). She also had a cane at the hearing, which the ALJ noted, observing that "it's been used for a while." (Tr. at 64). The ALJ also noted that Bainbridge had to stand during the hearing, because sitting for too long led to back pain. (Tr. at 68). Bainbridge said that she elevates her foot throughout the day and would need a job providing that opportunity. (Tr. at 66).

Bainbridge first presented to Mary Shields-Anderson ("Shields-Anderson"),[2] M.D., on September 11, 2014, with complaints of foot pain aggravated by walking and standing. (Tr. at 359-360). Physical exam showed abnormal right foot bunion with deviated toes laterally and a mild contracture callus at the base of the toes. *Id.* Dr. Shields-Anderson diagnosed bunion and foot pain. *Id.* She prescribed Ibuprofen 800 mg three times a day. *Id.*

Bainbridge saw Jeffrey Angel, M.D., an orthopedic doctor, on May 20, 2015 for foot pain. (Tr. at 372-374). He found a large callus on three toes, the presence of hallux valgus, and hammertoes on four toes. *Id.* He diagnosed foot pain and bunion. *Id.*

---

[2] She goes by Dr. Shields, Dr. Anderson, and Dr. Shields-Anderson in the medical records, but will be referred to throughout this Order as Dr. Shields-Anderson.

On April 27, 2015, Bainbridge returned to Dr. Shields-Anderson with foot pain. (Tr. at 356-357). She had fallen and was using a cane. *Id*. She complained of pain at night and trouble sleeping. *Id*. Her foot knuckles were raised and bent, with calluses. *Id*. Dr. Shields-Anderson prescribed Neurontin and Naproxen. *Id*.

In May 2015, Bainbridge was fitted for custom foot orthotics, prescribed by Dr. Angel. (Tr. at 377). In June 2015, Bainbridge reported more foot pain to Dr. Angel, although nerve testing was negative. (Tr. at 382-384). He found tender calluses on her feet and diagnosed right foot pain, plantar fasciitis, and metatarsalgia. *Id*. He told her to wear arch supports. *Id*.

On July 17, 2015, Dr. Shields-Anderson referred Bainbridge to a foot specialist. She saw Jason Smith, D.P.M, on August 10, 2015 for bilateral foot pain requiring the use of a cane. (Tr. at 397-398). She again said she could not stand or walk for very long. *Id*. Dr. Smith found hyperkeratotic lesions on Bainbridge's right foot, with decreased range of motion. *Id*. He also diagnosed hallux valgus bilaterally and polyneuropathy. *Id*. Dr. Smith noted that Bainbridge exhibited a "slow, deliberate gait assisted with a cane." *Id*. He doubled her dose of Gabapentin. *Id*.

When Bainbridge saw Dr. Smith again two weeks later, she said she experienced little relief from increased Gabapentin. (Tr. at 399-400). Dr. Smith added Amitriptyline to her medications. *Id*. When Bainbridge told Dr. Smith later

that Amitriptyline helped some, he doubled the dosage. (Tr. at 401-402).

In April 2016, Bainbridge told Dr. Shields-Anderson that she could not be on her feet more than 10 minutes at a time. (Tr. at 94-96). Dr. Shields-Anderson prescribed Naproxen. *Id*. Also in April 2016, Dr. Smith debrided painful right foot calluses for Bainbridge. (Tr. at 407-408). On April 27, 2016, x-rays of Bainbridge's right foot showed mild hallux valgus deformity at the first metatarsophalangeal joint. (Tr. at 368-369). X-rays of the left foot showed mild nonspecific soft tissue swelling. *Id*. On June 20, 2016, Dr. Smith debrided calluses again. (Tr. at 404-405).

On July 25, 2016, Dr. Shields-Anderson completed a medical source statement. (Tr. at 414-415). She said Bainbridge could not stand or walk more than 2 hours in a workday. *Id*. She said Bainbridge would need to change positions frequently, have frequent rest periods, take longer than normal breaks, and shift positions at will. *Id*. She said that Bainbridge would miss more than 4 days of work per month. *Id*.

Two state-agency reviewing physicians considered the medical records and found that Bainbridge could perform medium work (opinions dated August 21, 2015 and September 30, 2015)(Tr. at 144, 172). The ALJ gave little weight to Dr. Shields-Anderson's opinion and uncritically accepted the opinions of the non-examining reviewing physicians, each of whom arrived at conclusions that were clearly

6

contrary to the overwhelming weight of the medical evidence, and the opinion of Brainbridge's long-time treating physician.

It is the ALJ's function to review all of the medical evidence and resolve conflicts among the various treating and examining physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). A treating physician's opinion must be discussed by the ALJ and, if rejected, reasons are necessary. *Ingram v. Charter*, 107 F. 3d 598, 602 (8th Cir. 1997); *Prince v. Bowen*, 894 F.2d 283 (8th Cir. 1990). A treating physician's opinion accompanied by medically acceptable clinical or diagnostic data is entitled to controlling weight. *Baker v. Apfel*, 159 F. 3d 1140, 1145-46 (8th Cir. 1998).

Bainbridge argues that the ALJ should have given more weight to Dr. Shields-Anderson's opinion, and the Court agrees. Dr. Shields-Anderson treated Bainbridge starting in 2014, and she made multiple diagnoses relating to foot pain. She observed Bainbridge in person, and listened to subjective complaints. She prescribed pain medication and referred Bainbridge to specialists. And Bainbridge testified that Dr. Shields-Anderson filled out her medical source statement while Bainbridge was in the clinic room, having Bainbridge answer questions during the session. So the opinion was more than a conclusory check-box opinion, which are often given less weight. It was grounded in a longitudinal relationship with Bainbridge, and based

7

upon clinical testing and objective findings. While the ALJ said that Dr. Shields-Anderson's opinion was based upon subjective complaints alone, the fact that a treating doctor relies, in part, on a claimant's subjective complaints does not provide a basis for discounting it. *See Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997)("a patient's report of complaints, or history, is an essential diagnostic tool").

Furthermore, the state-agency physicians did not examine Bainbridge, and their opinions issued before x-rays of Bainbridge's feet were taken, and before Dr. Shields-Anderson rendered her opinion. The "opinion of a non-treating, non-examining physician" normally does not constitute substantial evidence to support an RFC assessment, especially when treatment developed after the opinions issued. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ erred in giving little weight to the opinion of Dr. Shields-Anderson.

Finally, the ALJ's conclusion that Bainbridge could perform medium work is not supported by any credible medical evidence and it contrary to all the facts in the record. Medium work requires walking or standing for approximately 6 hours of the day. https://secure.ssa.gov/poms.nsf/lnx/0425001001; 20 C.F.R. § 404.1567. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has

a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). Adequate medical evidence must exist that addresses the claimant's ability to function in the workplace. *See Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

Bainbridge was diagnosed with several foot conditions; she sought out consistent treatment from her PCP and two specialists; she took her medications as prescribed including increased dosages; and she walked with a can and wore orthotics and arch supports. All of this lent credibility to her complaints of moderate to severe pain over a two-year period. Bainbridge said she could do a few activities of daily living, but said she had to take breaks, use a chair in the shower, and could not drive to doctors' appointments. (Tr. at 65-68). The ability to do some activities of daily living does not mean a claimant can perform full-time competitive work. *Hogg v. Shalala*, 45 F.3d 276, 278 (8th Cir. 1995). Bainbridge's only hobbies were watching TV and visiting on the phone, neither of which required standing or walking. Bainbridge's complaints of pain were consistent with her daily activities and borne out by the medical evidence. Bainbridge unquestionably has serious and complicated foot problems, which calls into serious question how the ALJ could

9

reach the startling conclusion that she was capable of standing and walking for 6 hours per day. Thus, the ALJ's determination that Bainbridge has the RFC for medium work is clearly error and not supported by substantial medical evidence.

## IV. **Conclusion:**

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the ALJ did not give proper weight to the opinion of Bainbridge's treating physician, and the RFC exceeded Bainbridge's functional abilities.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 25th day of June, 2018.

_____
UNITED STATES MAGISTRATE JUDGE